to welcome a visiting judge. To call her a visiting judge is not to give her the enormous credit that is her due. I would think Judge Rustani is probably about the two or three best friends the Third Circuit has. She sits with us many times. I don't know how she does it consistent with her caseload. But we are so grateful, and we are so grateful to have someone so good with us. And I'm particularly grateful, as is Judge Agoura, to have her with us today. I'll tell you a dirty little secret. We were actually in New Judges School together 150 years ago. She was but a child. And we celebrated our 20th anniversary, didn't we, Judge Rustani? We did. So I welcome her most warmly. I think the lawyers in the cases before us today are privileged to have her sit here. We will hear argument in U.S. v. Aquino. Mr. Herman. Good morning, Your Honors. My name is Mark Berman. I represent the defendant Michael Ray Aquino. I'd like to reserve three minutes for rebuttal. Thank you. May I just say before we start, just speaking only for myself, I think this is a very tough case. I think it's a very close case. I think it's a very complicated case. But I think, I don't know how we're going to come out of it, but I think Judge Walz gave this case a tremendous amount of attention, gave very close consideration. And whatever the outcome, I just wanted to say that directly. I think that's right. Judge Walz did spend a lot of time thinking about these issues. There were hearings that took place that were not included in the appendix which weren't directly relevant to the appeal. But there's no doubt about it that Judge Walz spent a lot of time thinking about this case. But nevertheless, I'd have to respectfully say that his decision on which Chapter 2 offense guideline to apply ultimately was incorrect. And to his credit, when he made that decision, the Assistant United States Attorney who was handling the case at that time, he's a shrewd prosecutor, asked the judge to state on the record that he would have imposed the same sentence anyway, even if the defense position was the correct one. And to his credit, Judge Walz said, no, this is what I think the correct interpretation of the guidelines is. If I'm wrong, let the Third Circuit tell me and I'll take another look at it. So it truly is to his credit. To address the merits of the appeal, Michael Ray Aquino, as I'm sure the court is now familiar, was charged with and pled guilty to a very specific offense. That offense was possession and unlawful retention of two documents, two specific documents, relating to the national defense. And at his guilty plea colloquy, he admitted that those two documents were classified at the secret level and that he had reason to believe that they could be used to benefit a foreign country or to the detriment of the United States. Those are the facts that the district court was required to use to select a Section 2 guideline. But I think it's fair to say that the probation department in the pre-sentence report went very, very much further in setting forth what it believed were the facts that should be And considering the facts underlying the indictment, which was dismissed, and so what was really before the district court was not simply the retaining of documents, but it was everything but the kitchen sink, wasn't it? Okay, so I would agree with Your Honor that the probation department went very, very far in laying out additional facts that it considered relevant to this case. So far that, to its credit, even the United States Attorney's Office stepped away from the probation office's analysis of the sentencing guidelines. And Judge Walz wouldn't give role in the offense. Correct. He wouldn't give the enhancements. Correct. But speaking about how far the probation office went, let me give an example of clarify one thing. It sounds to me that when I read the transcript of what he said, he really stuck to the offense of conviction in making his selection. I didn't get that he read any of the things that sounded to me like the PSR was putting into the offense of conviction choice. It didn't sound like he used any of that in selecting events of conviction. So let me address that. Okay. So the sentencing offense guideline that he chose to use is entitled Gathering National Defense Information. Right. And it has commentary, an application note, which talks about conduct outside of gathering information, which might be sentenced under Section 2M3.2, the guideline that he ended up using. That guideline could not have been applied absent a finding of either gathering national defense information or the conduct referenced in that application note, and I'm happy to talk about it. So regardless of whether he explicitly discussed conduct outside offense of conviction conduct, the guideline could not have implied, at least without the implicit finding, that there was conduct outside of offense of conviction conduct because Michael Ray Aquino did not plead guilty to gathering national defense information, and he didn't plead guilty, and the government throughout always agreed that he wasn't even involved in transmitting national defense information. Now that's where I'm a bit confused. I don't, as I read these statutes, and the word gathering isn't a statutory term. And so I was thinking, maybe the district judge was thinking gathering is a kind of broader, more nebulous term that doesn't include just obtaining. Right. Includes something else besides just obtaining. Well, that's correct. The statute does not use the word gathering except in its title, much like the defense guideline. But the title of the statute goes beyond gathering. It's called gathering, transmitting, or losing defense information, and that's section 93. And the subsections of section 93 encompass other acts in addition to that, including the act of unauthorized retention, which Mr. Aquino pled guilty to. But if one looks at subsection A of section 793, it refers to, it describes the conduct or the act of conduct as referring to anyone who goes upon, enters, flies over, or otherwise obtains national defense information. That's conduct which falls within the dictionary definition of gathering. I have another difficulty with 3.2 in the sense, even if obtaining, even if retaining implies obtaining, before one can retain, one can argue, the material has to be obtained. The background, the commentary says, with reason to believe the information would injure the United States or be used to the advantage of a foreign government. When Mr. Aquino pled guilty, he pled guilty to knowing the material, had reason to believe the material could injure the United States. That's very different than would. So under the very, the plain meaning of the background to commentary to 3.2, it would seem this case does not fit. Two points. Let me start with the second, which is I obviously agree with Your Honor, not only because of the difference in meaning between would and could, but also because that commentary talks about transmitting, and to get to Your Honor's first point about obtaining, I don't equate obtaining with receipt. I'm saying, assuming or you end up, even if you have obtaining. Right. So yes, I agree with Your Honor's point, and the more general point, that this guideline in general is meant to apply to more serious conduct than the conduct to which Mr. Aquino pleaded guilty. And if the conduct to which he pled guilty does not come within those quite specific words, 3.2 refers you to 3.3 and says it may apply. And then 3.3 specifically describes the specific situation in which 3.2 might apply to a conviction under Section 793E, and that situation, those facts are not facts to which Mr. Aquino pleaded guilty. Can I go back to something? I know the statute to which he pled guilty says could be used in the United States. This language would be used. Is that in any statute? I don't know if it's in any statute, but I do know that the sentencing guidelines appear to make distinctions among the uses that information is being put to. So for example, even if you look at Section 2M3.3, and it's an argument we made in our brief, my general argument has been that 2M3.2 applies to more serious conduct than the conduct Mr. Aquino has pleaded guilty. I think that's clear. And corollary to that argument is that 2M3.2 applies to conduct more serious. I keep mixing them up. But the corollary to that argument has been that even Section 2M3.3, the less severe guideline, in some instances applies to conduct which is more severe than Mr. Aquino's. And including, if one looks at the second paragraph of the commentary, it says this section also covers statutes that prescribe the disclosure of classified information dot dot dot to the detriment of the United States or for the benefit of the foreign government. So even Section 2M3.3, the less severe guideline, applies to the more severe conduct of actually supplying documents that cause actual detriment to the United States. Well, that's only as to intangible information. That's not as to documents. There is no requirement as to documents in 3.3 that there's reason to believe the reason to believe it would cause injury to the United States or foreign government. That's only as to the intangible information. That's very clear. I feel sorry for people in this courtroom who don't know the background to this case because it must make no sense at all. But we're speaking in these numbers. That's very clear. In other words, if one says that 3.3 should apply, one would find, given that this is a case about tangible documents, documents, that when he said that there was reason to believe they could injure the United States, that that was mere supplicant. He didn't have to say that. So two points. One is that I'm not sure it's so clear in the way that Your Honor describes it because the commentary… That's a good question for you. Oh, well, let's see if I can answer it. You're supposed to say it is clear. Yes. Thank you, Judge. Oh, well, then I misunderstood Your Honor. But the commentary I read doesn't distinguish between tangible and intangible information, whereas… Oh, okay. Let's go back. You lose. All right. Background. I'm saying that particular part of the paragraph. There is a note that does distinguish, and my argument has been that that note, which specifically describes when 2M3.2 applies, isn't this case. It's talking about intangible information. We have to interpret. We have to do a legal interpretation, in my view, of both 3.2 and 3.3 and the statute. Do we not? Absolutely. So you can argue, but we have to interpret. Correct. See how we interpret. Taking a step back, the portion of the commentary in 2M3.3 that specifically references intangible information, application note 2, says that if the defendant was convicted of 18 U.S.C. section 793E for the willful transmission or communication of intangible information with reason to believe that it could be used, then apply 2M3.2. Right. And the argument we have made is that Mr. Aquino's conduct doesn't fit under that application note because, first of all, he didn't transmit information. Second of all, he didn't communicate information. Second of all, he didn't plead guilty to anything having to do with intangible information. He pleaded guilty to... I think what you have to do is distinguish between willfully or communicating, transmitting information. I know something in my head. To willfully transmitting or communicating a document. They're two different things. The first one requires with reason to believe it will enter the United States. The second one does not. I agree completely. What I'm saying is that Mr. Aquino didn't plead guilty to transmission at all. This is not a transmission case. And transmission is more serious conduct than retention, possession. But I'm sure that your friend across the aisle is going to say, well, you've been sweeping everything. I mean, I know those were the words of the plea, and all he pled to was retain two documents. But don't you know that we're permitted to consider under relevant conduct and under everything else all this other stuff, which will get him communicating and transmitting and doing everything but the kitchen sink, right? He's going to tell us that, isn't he? Well, Mr. Sanders is my friend. And I don't think he's going to tell you that, because Mr. Sanders used to be a defense attorney. And he knows that when it comes to selecting a Chapter 2 offense guideline, the court cannot consider relevant conduct. The initial selection of a Section 2 guideline is limited to offensive conviction conduct, not relevant conduct. Can I? Yes. No. I didn't want to cut you off. You know, one of my problems here was I'm trying to figure out what these two sections are supposed to cover, as you are. And if I use the title, I get nowhere, because I have this gathering thing with 3.2, and I know that 3.2 covers a lot of different things than gathering. The other one, 3.3, the one you want, starts off with transmitting, which sounds to me more severe than retaining. But the only retaining thing they referred to is retaining of classified information. And so I guess I turned my attention away from the titles, because I thought the titles were leading me astray in both cases. And why am I not right about that? First of all, I don't think the title of Section 2M3.3 should lead Your Honor astray. With respect to the portion of the title that refers to unauthorized receipt of classified information, that is better than any other language in both these guidelines describes what Mr. Aquino did. But it doesn't. But it doesn't describe it perfectly. I would agree. Neither of these guidelines describe it perfectly. And if there's a sliding scale of offenses, I'm not sure it would cover what he pled to either. Well, here's the thing. Mr. Aquino did receive classified information, and he was not authorized to receive that information. There's no doubt about it. Now, does that describe his entire offense of conviction conduct? It doesn't. But the problem is that 2M3.2 applies to more severe conduct than Mr. Aquino pleaded guilty to. So if the court is selecting a starting point, which is what the selection of a Chapter 2 guideline is, a starting point, it can't pick a starting point that applies to more severe conduct. It can, even if the court views it this way, select the guideline that applies to less severe conduct and then make an adjustment. Or I suppose, if it's wholly ambiguous, we could consider applying the doctrine of lenity, which I'll ask you about on rebuttal. You've gone way over your time. Thank you, Your Honor. Let me get the United States. May it please the Court. Stephen G. Sanders on behalf of the United States. Good morning, Mr. Sanders. Good morning. I'd like to answer first the would, could issue that Judge Barry raised and Judge Mastani commented on. There is no offense that's covered by 2M3.2 that has that mens rea that requires would injure. So that's just, I think, I wouldn't call it careless, sloppy, but it is just— It could be careless, sloppy, or it could be the Commission deciding we think it should be would for purposes of applying the much more severe setting guidelines. It could be, but that would result in a bizarre anomaly because, for instance, the conviction under 1030A1, which doesn't require that intent, this is the only guideline that is referenced for that statute and you could never apply it. You would then be in a land where no guideline applies to that statute. What are you referring to? 1038A1? 1038A1 is one of the statutes referenced in 2M3.2. If he's correct, that we're not looking at relevant conduct for the starting point, we're looking for the sense of conviction, if the word would cause injury, if the word would is not in no statute, if it meant would instead of could, you could never apply 2.2. Is that correct? That's correct. You couldn't apply it to any of these offenses. That anomaly is made clear by looking at 2M3.3, which does use the word could in referring to the very same statute, in other words, to 793D&E, which is referenced in 2M3.2. I don't think the word could is a basis on which to decide this appeal. I think it's just the Commission was using broader language. We don't know. I don't know either. I looked. I tried to look. In dealing with the scope of 3.2, of course the title says gathering, and then we don't see that anywhere else, but I noted in the comment that it deals with, quote, diverse forms of obtaining and transmitting. Is what he pled to, could it be considered a diverse form of obtaining? It is, and here's why, and I'll go back to what our position is, and it's this. A defendant who violates 793D&E involving tangible information or intangible information, let me start with tangible information, without the mens rea, without the heightened mens rea, falls under 2M3.3. A defendant who violates 793D&E with the heightened mens rea, either for tangible or intangible information, falls under 2M3.2. So you're saying because at the plea, he said during Rule 11, with reason to believe it could violate, that that sweeps him in, that just by admitting to that, it sweeps him into 3.2. I can go one better. It's not because he admitted it at his plea call plea. It's because it was charged in the information. Well, I know it was charged. And I agree with my colleague that that is the controlling, those are the controlling facts here, is what was charged in the information. And aren't I correct that the judge did not do what the PSR did? It limited his choice to what it thought was the offense of conviction. Whether he's right or wrong, that's what he thought he was doing. That's exactly what he did. And you read those critical brief notes. And you don't have a problem, supposing I agree with you so far, on the charged in the information. But it requires, this is another hang-up, the would as opposed to could. And we have to say, well, that's a mistake. That's correct. Because otherwise, the government would have to charge would or have to, I guess, get admissions on that, even though that's not... Get admissions on that. That's one of my problems. Well, what is the admission if it's not an offense of conviction? Or we would have to charge, we'd be in a bizarre world of charging the offense according to what the guideline commentary says, instead of what the statute says. And that's not what we do. We wouldn't be talking about it if you did. I know. And if I can, and that raises a good point, Joshua Carr, of why we charge this heightened mens rea in this information. Because Barry, you said before that it was suppressive, because you don't need it under But there's some history to this case, which is set forth in the brief, but not clearly. And that is when the defendant was indicted, he filed a couple of motions. Now, they're not in the appendix, but they are in the record. And those motions were a bail motion and a motion for discovery, the premise of which was that we could not establish that the defendant knew that this was national defense information or that it was classified. That was his primary defense. And when we came to a plea agreement, you'll see in the plea agreement, and that's that supplemental appendix at page 75, that heightened mens rea is also referenced in the plea agreement. It says you're going to plead to an offense involving tangible documents, but with this heightened mens rea. And once we have that in the information, we are within 2M3.2. And then the cross-reference that my adversary is relying on, application of 2 to 2M3.3, is simply reinforcing what is already made clear by 3.2. Judge Wall did not discuss the cross-reference. He did. I don't believe he did. I mean, I think, and that's to our benefit, I think he understood that that was reinforcing the primary argument we had made, which is you can read the background commentary to 2M3.2 and understand that this is a diverse form of obtaining, in other words, retention. And certainly 1030A1 is an offense that criminalizes retention of documents with this heightened mens rea to the same extent that it punishes people who transmit that information. So transmission and retention are treated equally with statute, and I think they're treated equally in the guidelines. The difference is the mens rea, and I want to go back to something my adversary said. He pointed to the second paragraph of the background commentary to 2M3.3 as saying that 3.3 actually imposes more lenient sentences for more serious offenses. That's not true. The second paragraph refers to two statutes, 798 and 783B, and while one of them refers for the benefit of foreign power to the detriment of the United States, that's not a mens rea requirement. That is an effect requirement. So you can engage in conduct that has this effect, but there's no requirement in those or a reason to believe that that's going to happen. And in fact, those involve classified information, which is a less sort of, we can talk about the categories of national defense information versus classified, but those are classified information. So maybe you turn to the issue then of what if the two guidelines appear to be equally applicable? Which rule do we apply? Well, I think you can go to the application note 5, the 1B1 point, I believe it's 2, which says if two are equally applicable, you choose the more serious, the higher of the two. That's one way to get there. The other way is I think under the standard of review, if we're correct that this is a due deference standard and there's no one clear answer, in other words, the law doesn't give you, you must do this, and here we're talking about what's most appropriate, then I think you can defer to a choice. Well, if there's no clear answer, if it's ambiguous, if these guidelines sections are ambiguous to the conduct, would not the doctrine of lenity apply such that you would apply the lesser of the two? I don't think so, Your Honor. Well, that's what the doctrine of lenity would say. I think the doctrine of lenity applies when you have a criminal statute that is ambiguous. It applies to the guidelines as well. And I find that surprising because I don't know that defendants commit offenses or are deciding when they're undertaking conduct whether they know their conduct is prescribed because it's going to result in a higher sentence than they would otherwise receive, as opposed to whether they're going to engage in criminal conduct at all. But I don't think the doctrine of lenity has to apply here. Didn't we say that in Mobley, U.S. v. Mobley, that it would apply to the sentence as well? Mobley? I would have to check, Your Honor. But let me go back to our primary position because we think that there is one clear answer here, and we think the answer to this question is in 2M 3.2. And the application of 2 simply is a cross-reference that reinforces that mens rea. And it's the regime that we see from 2M 3.1 all the way to 3.4. And while something jumped in my mind, we were talking about titles before. If I can refer, Your Honors, to Amendment 491, that's in the appendix C to the guideline, you'll see that this guideline provision, before it was amended, had only one title. This is 2M 3.3. It said only transmitting national defense information. All these other titles were scattered in sections beyond 2M 3.4 as individual guideline provisions. And this Amendment 491 coalesced them all down into one guideline. So these were all separate, including unauthorized receipt of classified information, which was formally in 2M 3.8 and referred solely to 793B. So that title, unauthorized receipt of classified information, can't help us answer the question that's presented in this case. I'm recalling my old grandmother who used to look back in the good old days when things were easy in terms of sentencing. But when you refer to Appendix C, which is probably another 500 pages on top of the guidelines, which are 500 pages, and you say how they coalesced them down to make it simple. No, I shouldn't say they did that. No, you didn't say simple. No, they did it to make it more complicated. They succeeded. Right. It was easier the other way. Whoever they are. If your honors don't have any more questions, I'm happy to rely on my brief. Thank you. Thank you. Thank you. Just three quick points. Mr. Sanders referred to diverse forms of obtaining and equated them with unauthorized retention. And I have to disagree with that characterization, and I'll give two reasons. One of all, the first reason is the documents Mr. Aquino was pleaded guilty to possessing, he actually received by e-mail. It was carbon copied on the e-mail. You're saying it was not an active. Correct. It was a passive. It was a passive receipt and not an active obtain. Exactly. And it's relevant to all of our experiences, because every day we receive e-mails that we haven't obtained. They're in our inboxes, but we haven't gone out to obtain them. We get spam, we get all other sorts of e-mail. And the second point on that issue is that if one takes a look at the statute, section 793, it actually uses the word obtains as an active verb. I won't read the statute, but your honors can take a look afterwards. And the significant thing is that in subsection C, the statute refers to receives or obtains, and obviously sees a distinction between those two verbs. And in subsection E, the subsection that Mr. Aquino pleaded guilty to, doesn't use the word obtains at all. It uses the word possession and retention. So unless the government is prepared to say that all drafting is sloppy, one would assume that there's a reason for it. You have a good point, but it does have a modifier, diverse forms of. It's not just obtaining. Sure. And the statute itself talks about diverse forms of obtaining. It says, I think I read this earlier, but goes upon, enters, flies over, or otherwise obtains. Those are diverse forms of obtaining information. But it doesn't go so far as to include the passive act of retaining. I think Mr. Sanders also argued, if I heard him correctly, that all offenses involving the so-called mens rea fall under section 2M3.2. And that just isn't the case. It's just not consistent with the guideline language. 2M3.2, again, the commentary says, look to the commentary of 2M3.3 to see which cases get sentenced under 2M3.2. And application note 2 of section 2M3.3 says, if the defendant was convicted under section 793E for specific conduct, then apply 2M3.2. For intangible information only. Correct. It doesn't refer to the facts of this case. So I would argue that the government's broad interpretation of 2M3.2 applying to all offenses involving the mens rea simply is inconsistent with the language of the guidelines. And to jump back to a point Judge Barry had raised, and I guess a question Judge Chigares asked about the guidelines being equally applicable, the guidelines in this case are not equally applicable. They may be equally inapplicable, but there can be no possible argument that they're equally applicable because 2M3.2 applies to conduct that Mr. Aquino did not plead guilty to. And if there is an ambiguity, then your honors are correct, that the doctrine of lenity would apply, it does apply in sentencing, and the court, the district court, would have been required, again, to start the sentencing analysis with 2M3.3. And that isn't to say that somewhere down the line an argument could be made that, well, perhaps an adjustment needs to be made, the guidelines are no longer binding, but the starting point has to be the less severe guideline. And one last point, which is this, that Mr. Aquino was arrested and imprisoned over three years ago, which if the court were inclined, and I don't mean by any sense to be presumptuous, but I think it's important to mention, if the court were inclined to agree with the defense view that Mr. Aquino needs to be resentenced, he could be resentenced to a sentence that's less than the amount of time he's already served. He doesn't have the resources for bail. He would be presumably deported? I mean, he overstayed his visa. So he's in, say, a county jail, I gather, on detainer. I'm sorry, I didn't hear the last part, Your Honor. Is it an INS detainer? I assume there's an INS detainer. But nevertheless, that process would begin sooner. Thank you, Your Honor. Thank you. Very well argued. The case was really very well argued by both sides. It's a very difficult case, and we will take it under advice. Thank you very much.